JOHN C. FRANTZ *et al.* v. MARGARET SAYLOR.

(Filed July 18, 1902.)

1. INJUNCTION—Attorney's Fees not an Element of Damage in Action Upon Undertaking. Attorney's fees are not a proper element of damage to be proven in an action upon an injunction undertaking. (Oelrichs v. Spain, 15 Wall. 211, followed and approved.)

2. SAME—Expense of Removing Improvements, Harvesting Crops and Injury to Pasture and Pond not Proper Elements of Damage, When. The parties had been contestants for a tract of government land. The result of the contest was in favor of plaintiff in error, and after he had secured his entry he brought an action of injunction to dispossess defendant in error of the land. The trial court sustained a demurrer to the petition, on the ground that it had no jurisdiction of the subject-matter. Held, that the expense of removing improvements, harvesting crops, and injury to pasture and pond on the place are not proper elements of damages in an action upon the injunction undertaking, as the plaintiff in error was entitled to possession of the land, and if the defendant was entitled to remove her improvements, the removal should be at her expense.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*J. F. King,* for plaintiffs in error.

*S. H. Harris,* for defendant in error.

Judgment modified.

STATEMENT OF FACTS.

This action was brought by the defendant in error, plaintiff below, before a justice. of the peace, upon an injunction bond, the penalty of which was one hundred dollars. The case was appealed to the district court of Kay county, and there tried, resulting in a verdict for the

defendant in error for the full amount of the penalty of the bond. The injunction bond was given in a former action between the same parties, and was conditioned, as required by law, "to pay to the injured party the damages he máy sustain if it be finally decided that the injunction ought not to have been granted."

The parties to this case had formerly been contestants for a tract of government land, the result of the contest being in favor of the plaintiff in error and after he had secured his entry he brought the action in which the injunction undertaking was given, to dispossess the defendant in error from the land, which he claimed as a homestead, all these matters being set up in the pleadings. On May 2, 1899, a temporary order of injunction was issued in the case, as was the practice at that time, and thereafter subsequent temporary orders were issued, the undertaking having been made on the 12th day of June of the same year. The first temporary order made reduced the possession of the defendant in error to that portion of the land which she had in wheat, and the part surrounding her house, giving her a specified time to harvest the wheat, after which the plaintiff was to be given possession of all the land, except that part immediately surrounding the house of the defendant in error. On the 25th day of September a farther temporary order was made, allowing the defendant in error to remain in possession of three acres about her house, and requiring her to fence the same within fifteen days and she was enjoined from occupying any other portion of the land.

On the 5th day of May, 1900, the cause came on for final trial, and, after hearing the matter, the court held

that it had no jurisdiction of the subject-matter involved in the suit; that the temporary restraining order should be vacated, and that the demurrer to the plaintiff's petition, raising the question of jurisdiction, should be sustained, and entered judgment accordingly. The remainder of the facts appear in the opinion.

Opinion of the court by

PANCOAST, J., At the trial of this case the court allowed the plaintiff to prove, as an item of damage, that she had contracted to pay her attorney $50 in the former injunction suit, and had paid $25 of that amount in cash. She was also allowed to prove, as an item of damage, $10 for injury to a certain pasture and to a pond on the place. Also, that she had paid $10 for removing the fence and other improvements that she had to take off of the land, a part of which sum seems to have been paid for harvesting the crop then on the land. Other items were allowed to be proven which we do not deem material here, as they were the ordinary items of expense usual in such cases.

It is insisted that the court erred in allowing each of the three above mentioned items. The question of most importance here is upon the item allowed for attorney's fees. It is insisted upon the one hand that the decision in the case of *Oelrichs v. Spain,* 15 Wall. 211, is decisive of this case, while, on the other hand, it is contended that the rule laid down there is expressly limited to the federal courts, and that in the case of *Richards v. Green,* 32 Pac. 266, following the 15 Wall., the court overlooked the distinction made by the supreme court of the United States in adopting the construction of local statutes and rules.

In an examination of the different state courts upon this question, we find that probably a majority of the states allow attorney's fees to be proven as an item of damages in an action upon an injunction undertaking, some being more restricted than others, and holding to the rule that only those items of attorney's fees which were expended strictly upon the effort to dissolve the temporary injunction should be allowed, and that attorney's fees generally for the whole case, should not be allowed. Other states are more liberal, and follow a broader rule; (*Underhill v. Spencer,* 25 Kan. 71; *Nimocks v. Wells,* [Kan.] 21 Pac. 787.) While others again follow the rule laid down by the supreme court of the United States, and refuse to allow attorney's fees in any case.

The case of *Oelrichs v. Spain, supra,* was an action arising in the District of Columbia, and appealed from the supreme court of the District. The claim there for attorney's fees was not based upon any statute, but upon general principle, following the rule upheld by the several states which allowed attorney's fees as an item of damage for procuring the dissolution of an injunction. In this case the supreme court says:

"Upon looking into the report we find it clear and able, and we are entirely satisfied with it, except in one particular. We think that both the master and the court erred in allowing counsel fees, as a part of the damages covered by the bonds.

"In *Arcambel v. Wiseman,* 3 Dall. 306, decided by this court in 1796, it appeared 'by an estimate of the damages upon which the decree was founded, and which was annexed to the record, that a charge of $1,600 for counsel fees in the courts below had been allowed.' This court held that

it 'ought not to have been allowed.' The report is very brief. The nature of the case does not appear. It is the settled rule that counsel fees cannot be included in the damages to be recovered for the infringement of a patent. * * * * * They cannot be allowed to the gaining side in admiralty as incident to the judgment beyond the costs and fees allowed by the statute. * * * *

"In actions of trespass where there are no circumstances of aggravation, only compensatory damages can be recovered, and they do not include the fees of counsel. The plaintiff is no more entitled to them, if he succeed, than is the defendant if the plaintiff be defeated. Why should a distinction be made between them? In certain actions *ex delicto* vindictive damages may be given by the jury. In regard to that class of cases this court has said: 'It is true that damages assessed by way of ·example may indirectly compensate the plaintiff for money expended in counsel fees, but the amount of these fees cannot be taken as the measure of punishment or a necessary element in its infliction.' (*Day v. Woodworth,* 13 How. 370-371.)

"The point here in question has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to, and we think is substantially determined by that adjudication. In debt, covenant and assumpsit damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the *expensa litis* to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a

master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary.

"We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy.

"The amount of the allowance in this case may be remitted here, as was done in the case in 3 Dallas, and the decree of the circuit court will, thereupon, be affirmed. Otherwise the decree will be reversed, and the cause remanded for the reformation of the decree, in conformity to this opinion."

We think it would serve no good purpose to discuss the reasons for allowing or disallowing payments made to counsel as an item of damages in procuring the dissolution of an injunction. The supreme court of the United States is a court of last resort in civil cases in this territory, when more than five thousand dollars is involved; and while this case could not be appealed to that court because of the amount involved in it not being sufficient to authorize an appeal, yet the decision of the supreme court of the United States is just as binding upon this court.

It is true that the supreme court of the United States, in certain cases appealed from state courts, where the question of the practice and rules of such state courts have been involved, as well as in cases of statutory provision, has followed the decisions of such state courts, and properly applied the statutes. But here there is no such application to be made. The supreme court had no decision of a state court to apply, nor statutory provision to construe. The

decision was upon general principles, and the reasons given for the rule laid down, whatever may be said in favor of the other rule, are certainly ample to maintain the position. It cannot be denied, as stated by the supreme court of the United States, that some counsel demand more than others, and that some clients are willing to pay more than others; that many times more counsel are employed than necessary; and especialy is it true that when both counsel and client know that the fees are to be paid by the opposite party, there is danger of abuse. It would almost seem from the testimony that such was the case here. Twenty-five dollars was all that had ever been paid for counsel fees, yet the evidence showed that the contract was for double that amount. No attempt had ever been made to collect the remainder due, and the attorney went so far as to testify that the amount was not paid because of his negligence in making the collection. Who knows whether the remaining $25 will ever be paid or not? Who knows but that if it had not been for the contract in the light of this case, that $25 would not have been the full fee? We think the court erred in admitting proof of counsel fees as an element of damages. There is no testimony offered by the defendant in opposition to this item, and the amount went to the jury undisputed.

Coming now to the next item of damages—the damage done to the pasture and the pond on the place. Testimony was allowed to go to the jury which was undisputed, that the defendant had been damaged in the sum of $10 for injury to pasture and a pond which had been constructed by her husband upon the place. Upon what principle can this be allowed as a proper item of damage? The plain-

tiff in error, according to all the records and testimony, was entitled to possession of the place. The contest had resulted in his favor, and he was the homestead entryman. Whatever pasture there was on the place, and whatever there was in the way of ponds on the place belonged to the plaintiff in error. They were not subject to removal. The defendant in error had no property in them, and certainly could not be damaged by their injury.

The third item, the $10 for removing crop and improvements, was not a proper element of damages. It might be a question whether the defendant in error had the right to remove the crop and improvements at all under certain circumstances, and certainly if allowed to remove them the expense of such removal could not be charged to the plaintiff in error. Whatever was spent for harvesting crops is so clearly without the rule, that a mere statement of the proposition is sufficient to show that it was error in allowing it. Unquestionably the defendant in error would have harvested the crop if the injunction suit had never been commenced, and if good judgment had been used the fence and other improvements on the place would have been removed by the defendant in error before an action for possession was commenced. It has been repeatedly held in different states that when a party is dispossessed of land, he cannot thereafter remove his improvements. Certainly, then the defendant in error cannot be allowed the advantage of removing her improvements, and at the same time require the plaintiff in error to pay the expense thereof. There was no dispute upon these three items of damage. The only testimony going to the jury was that of the plaintiff. The amounts were taken without question, so

that it is clear that the jury in rendering the verdict allowed the sums in full to the plaintiff. If the case had been as carefully tried as it should have been by counsel, the error in these two last items would probably not have occurred.

The court below having erred in allowing these three items of damages, and this court being able to ascertain the exact amount, the judgment of the court below will be modified, and the defendant in error will be allowed fifteen days from this date to remit the sum of $70, and the decree of the court below will thereupon be affirmed. Otherwise, the judgment will be reversed and the cause remanded for a new trial.

Hainer, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.