# New Decatur *v.* Berry.

*Action on Common Counts for Work and Labor.*

1. *Municipal corporation ; power to enact quarantine regulations.* A municipal corporation, organized under the general statutes (Code, §§ 1486-1516), has no power to establish and enforce quarantine regulations, such power not being expressly granted, nor necessarily or fairly implied in or incident to the powers expressly granted, nor essential—that is, indispensable, and not simply convenient—to the declared objects and purposes of the corporation; and having no such power, it is not liable for the compensation of an officer employed by the intendant to enforce quarantine regulations against a neighboring town, in which an epidemic was prevailing.

APPEAL from the City Court of Decatur.

Tried before the Hon. W. H. SIMPSON.

This action was brought by Zeb Berry, against the town of New Decatur, a municipal corporation organized under the general statutes in 1887; and was commenced on the 14th May, 1889. The complaint contained the common count for work and labor, and a count for services rendered by plaintiff, at the instance of defendant, "as a police and quarantine officer, in the months of September, October, and November, 1888." The defendant filed several pleas, denying its liability, denying its employment of plaintiff, and denying its authority to establish or enforce quarantine regulations; and issue was

[New Decatur v. Berry.]

joined on these pleas. It appeared on the trial, as the bill of exceptions shows, that on the 20th September, 1888, the yellow fever having been declared epidemic in Decatur, which is separated from New Decatur only by the boundary line between them, the people of the latter town became very much alarmed, and held an informal meeting to devise measures of protection against the spread of the epidemic; that the plaintiff, during the night of the 20th, voluntarily acted as a guard along the division line; that on the morning of the 21st, at an informal meeting of the town council, called by the intendant, a resolution was passed establishing a quarantine against the town of Decatur, and appointing a guard of four persons to enforce it; that the plaintiff was appointed by the intendant as a captain of this guard, and that he performed in that capacity the services for which he sought to recover compensation. The case being submitted to the decision of the court without a jury, the court rendered judgment for the plaintiff, holding that the power to establish and enforce quarantine regulations "was simply an extension of the police power." The defendant excepted to the judgment, and here assigns it as error.

C. A. CASTLE, and WERT & SPEAKE, for appellant, cited *Mayor of Mobile v. Allaire*, 14 Ala. 401; 32 N. H. 172; 4 Wheat. 636; 12 Barb. 559; 11 N. Y. 392; 12 Ohio St. 375; 1 Dillon's Mun. Corp. 440, 449.

J. M. BUFORD, *contra*, cited Dillon's Mun. Corporations, §§ 385–6, note p. 381; Waterman on Corporations, 595, § 160; *Eufaula v. McNab*, 67 Ala. 590; *Selma v. Mullen*, 46 Ala. 411; *Mayor v. Moog*, 53 Ala. 561; *Greensboro v. Ehrenreich*, 80 Ala. 579.

McCLELLAN, J.—"It is a general and undisputed proposition of law, that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in *express words;* second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable." 1 Dillon Mun. Corp., § 89; *Smith v. Newbern*, 70 N. C. 14; *Cook County v. McCrea*, 93 Ill. 236; *Wetumpka v. Wetumpka Wharf Co.*, 63 Ala. 611; *Eufaula v. McNab*, 67 Ala. 590.

Applying this statement of the powers of municipal corporations—which is said by high authority to be "the best summary of all the decisions upon that point to be found in all the

books"—to the charter of the town of New Decatur as it was organized and existed in 1888, the conclusion must be against the power then exercised by that municipality, to declare, establish and enforce quarantine against the town of Decatur. New Decatur was organized under Chapter 1, Title 14, of the Code, §§ 1486–1516, and its power to the end in question must be referable to that statute, if it exists at all. Confessedly no such power is conferred by *express words;* confessedly, also, no such power is essential—not simply convenient, but indispensable—to the declared objects and purposes of the corporation. And certainly, though not confessedly in this case, the power to establish quarantine, and prohibit persons and property from coming or being removed into the town from Decatur, can not be said to be necessarily or fairly implied in, or incident to, the express grants of power, which are : to pass by-laws to enforce the powers granted; to prevent and remove nuisances ; license, &c., shows, amusements, and retailers ; to restrain and prohibit gaming, houses of ill-fame, disorderly conduct, &c.; to establish watches, and appoint captains thereof; to establish and regulate markets and town prisons, sink and repair public wells, &c., and keep in repair streets, alleys and drains ; to license and regulate vehicles carrying for hire ; to appoint a marshal, clerk, treasurer, and other necessary officers, and provide their compensation ; to impose fines, and provide for their collection; to supply vacancies in corporate offices; to purchase and hold property, and dispose of the same; to exercise such other powers as are conferred by law, and to levy and collect annual taxes on property. How the granting of either of these several powers could be made the basis for a necessary or fair implication that the legislature intended also to confer the power to establish quarantine, is not conceivable. How the power to prohibit persons from coming into the town, under any circumstances, can in any just sense be said to be incident to any of the powers enumerated, we are unable to see. Every power conferred may be fully exercised and effectuated without the exercise of the power here claimed. No power conferred would, in the slightest degree, be aided by the exercise of the power claimed here. The power claimed is not expressly granted ; it is not implied in, or incident to any power granted; it is not essential to the declared objects and purposes of the corporation; it does not exist.

The employment of the appellee by the corporate authorities, as "chief of the quarantine guard," can not find justification or authorization under the power "to establish night and day watches and patrols, and to appoint captains thereof."

[Bullock v. Tuttle.]

The watches and patrols thus provided for are for the ordinary police of the town, charged with the conservatism of peace and good order, and the enforcement of authorized ordinances of the municipal government. None of these duties were to be performed by the alleged quarantine guard, or the appellee as chief of that guard. He was employed, if at all, solely for the purpose of discharging functions with which the municipality had no power to clothe him, and rendering services which were not in furtherance of any municipal object or purpose. The corporate authorities having no power to establish quarantine regulations, they, of course, were without authority to execute and enforce them, and without authority to bind the town to payment for services rendered in the execution and enforcement of the *ultra vires* ordinance or resolution. And the attempt to ratify the action of the intendant, in employing appellee and assuring him that his services would be remunerated, was equally abortive as fixing any liability on the town.—1 Dillon Mun. Corp. §§ 463–65.

The judgment of the City Court is reversed, and judgment will be here rendered for the appellant, defendant below.